*Paid*
*Receipt # 150007943*

38

# UNITED STATES DISTRICT COURT
## for the
## EASTERN DISTRICT of MICHIGAN

AZAZHUSEN   KHATRI, Estate )
                    PLAINTIFF, )
            v. )
 )
 )
DEARBORN PUBLIC )
SCHOOLS DISTRICT, et al. )
                    Defendant. )

Case: 2:23-cv-12930
Assigned To : Michelson, Laurie J.
Referral Judge: Grand, David R.
Assign. Date : 11/16/2023
Description: CMP KHATRI V.
DEARBORN PUBLIC SCHOOLS DISTRICT (NA)

## **COMPLAINT**

COMES NOW, PLAINTIFF and files ITS Complaint against the DEFENDANT pursuant

to F.R.C.P. 3 for in school Bullying, Sexual Harassments and Threats against AMIRAH

KHATRI, Estate which created the following violations:

1. U.S. Constitution 5th Amendment Due Process of Law (1788).

2. 14th Amendment rights, all these Laws in this Proceeding Under the RICO LAWS Title 18 USC 1961-1964 (1970) which provide a Remedy for Compensation, Deprivation of Rights under the COLOR OF LAW.

3. Title 42 USC 1983, Civil Action of Deprivation of Rights.

4. 42 U.S. Code § 1981 - Equal rights under the law and 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights; 42 U.S. Code § 1983 - Civil action for deprivation of rights and 18 U.S. Code § 241 - Conspiracy against rights; 18 U.S. Code § 242 - Deprivation of rights under color of law and 28 U.S. Code § 1443 - Civil rights cases.

5. Title VI of the Civil Rights Act of 1964, Section 100.3(a).

6. Title IX of the Education Amendments of 1972, Section 106.1(a).

7. Section 504 of the Rehabilitation Act of 1973, Subpart 104.4.

8. The age Discrimination Act of 1975, as amended 42 U.S.C 6101 et seq.

9. Title II of the Americans with Disabilities Act of 1990 (ADA), Subpart B, Section 35.130(b).

10. Title 18 USC 241, 242, 245 CONSPIRACY & DEPRIVATION OF RIGHTS UNDER COLOR OF LAW & FEDERALLY PROTECTED ACTIVITIES.  371 CONSPIRACY BY DEARBORN SCHOOL DISTRICT WHICH IS a RICO LAW (1961-1964) VIOLATION.

11. Elliott-Larsen Civil Rights Act of the 1977, Section 102(a) - Michigan State Civil Rights.

12. Michigan Revised School Code (Act 451 of 1976 – 380.1300A).

13. See all Exhibits.

WHEREFORE, PLAINTIFF's Complaint is filed properly according to F.R.C.P. and Demands compensatory and punitive damages in the amount of $30,000,000.00 and for the Estate to be made Whole again.

Ecclesiastically,                                        Date: November 16, 2023

AZAZHUSEN   KHATRI, Estate
Azaz Khatri, Executor
2551 Pardee Avenue
Dearborn, Michigan 48124
248-680-9990

**UNITED STATES DISTRICT COURT**
**for the**
**EASTERN DISTRICT of MICHIGAN**

| | | |
|---|---|---|
| AZAZHUSEN   KHATRI, Estate | ) | |
| PLAINTIFF, | ) | |
| v. | ) | |
| | ) | |
| | ) | Case No. |
| DEARBORN PUBLIC | ) | |
| SCHOOLS DISTRICT, et al. | ) | Judge: |
| Defendant. | ) | |

## <u>EXHIBIT 1</u>

KHATRI, Estates

LETTER OF CLAIM TO DEARBORN LINDBERGH ELEMENTARY SCHOOL

This letter is a direct and formal complaint to the Dearborn School Board and any other required officials, it shall take the place of any required format outlined in the Dearborn School Board policies. The KHATRI FAMLY, Estates represent AMIRAH KHATRI, Estate, a 4th-grade student at Lindbergh Elementary School. Several documented incidents involving threats of physical violence, sexual harassment, intimidation, and bullying have occurred against Amirah at Lindbergh Elementary and were ignored by Ms. Zainah Tiba, the "building principal", and others in their supervisory role.

The situation is particularly troubling as Mrs. Khatri is a member of the school's parent teacher association (she has been the PTA treasurer for four years and is its current president) and a volunteer there for the past eight years. All of that said, she has no faith that on-site school administrators will address this problem. Her trust in the school's leadership is broken.

The teachers and Ms. Tiba, were made aware of these incidents, did nothing to resolve the matters, and the bullying escalated to the point where the KHATRI, Estates had no choice, but to remove their child for safety reasons. The principal and certain teachers have failed to protect Amirah. The bullies have faced no consequences for their actions. Simply, Lindbergh school has not safeguarded Amirah, in violation of Dearborn Public Schools written policies.

The AMIRAH KHATRI, Estates were too frightened to attend school, and her parents fear that she may be psychologically damaged because of the unchecked trauma inflicted by a gang of students. Amirah and her parents have good reason to believe that the incidents will continue without intervention. Amirah's parents are worried that this situation is compromising her school experience in the Dearborn School District and will have lasting, corrosive effects on her education going forward. A strong response is needed from the Dearborn School Board against the principal, certain teachers, and the perpetrating students.

The four incidents at Lindbergh Elementary, have caused trauma to Amirah and her parents.

The bullying began on the first day of school, August 30, 2021 by gang of boys. It continued until her parents were forced to remove their daughter, to protect her from the constant bullying, threats, sexual harassment, and intimidation. The leader of this school gang is Moussa, another 4th-grade student. His followers are Ryan, Jacob, Hussam, and Mayal. The bullying escalated on Monday, September 13, 2021, with a vile and filthy incident involving Moussa and Ryan. This culminated in an incident of sexual harassment, during Daily 5 or Mindfulness time. They took some sticky notes, went into the bathroom and rubbed the sticky notes against their genitalia. They came back to class, and told their friends what they had done, and threw the sticky notes at Amirah which landed at her desk, to their friends' amusement. Furthermore, Moussa walked up to Amirah's desk and told her to kiss the sticky notes, and rub them all over her body, like a "sanitizer." Asking Amirah to kiss the sticky notes is disgusting behavior coming from anyone, let alone from a nine-year-old boy. A classmate who sat next to Moussa heard this conversation and warned Amirah not to touch it. The 4th-grade teacher, Ms. Gerardo, knew about this incident and failed to discipline Moussa and Ryan. She told Amirah to wash her hands and report to the social worker instead, instead of returning to class. Amirah, who did nothing wrong was sent to a counselor, Moussa and Ryan were not disciplined. These students had the green light to continue with their harassment. Ms. Gerardo did not inform Amirah's parents of this incident, even though she was required to do so by law and school policy. Further, under the Michigan Child Protection Act, teachers and counselors are required by law to report this type of abuse. No DHS-3200 form or any online report was filed with the Department of Social Services. Ms. Gerardo, the counselor, and Ms. Tiba had a legal duty to report this incident, and they failed. MCL

380.131(5)(f) states that there should be: "A procedure for providing notification to the parent or legal guardian of a victim of bullying and the parent or legal guardian of a perpetrator of the bullying."

What were the school's procedures and why didn't they inform Amirah's parents? The school was aware of these rules because it's mandated to be conspicuously posted at the school. Had Moussa's and Ryan's behavior taken place in a work setting, severe consequences would have occurred. A lawsuit for a hostile work environment would have ensued.

Since the school failed to take action against Moussa and Ryan, they continued to bully Amirah. On Thursday September 16, 2021 Bully Moussa, in the playground, around 11:15 A.M., threatened to shoot her. A friend of Amirah has confirmed this. Those names will be given to the board upon their request. Moussa said **"I feel like putting a bullet in your head."** This threat of physical violence should have been dealt with by someone in authority, such as Ms. Gerardo or Ms. Tiba. Again, Ms. Gerardo did nothing and sent Amirah to the counselor, Ms. Barr. Ms. Barr was too busy to deal with this incident, so Amirah reported it to Ms. Barr the next day on Friday, September 17, 2021. Ms. Barr indicated that she would talk to Moussa. If she spoke to Moussa about this incident, it did not affect him, as you will see. However, for Amirah, the school is turning its back on her. Amirah was too afraid to go to school on Monday, September 20, 2021. Amirah told her parents she was getting bullied, however the fear of retaliation by Moussa and others kept her from really divulging to her parents what happened in detail. Please note that the school was aware that Mrs. Khatri was in the cafeteria on September 16, 2021 and in the media center on September 17, 2021 and No report was made to Mrs. Khatri even though she volunteers every day during the lunch hour. The principal had a duty to inform Mrs. Khatri. The threat to shoot Amirah caused fear and apprehension. This is a classic law school example of assault,

putting someone in fear and apprehension of a battery, both civilly and criminally. Amirah was very scared, and she remains so, and fears returning to her elementary school. When Moussa and Ryan threw the sticky note, they intended to hit her with it. No one would consent to these actions. The school was put on notice of the two incidents and did nothing! Again, no disciplinary measures were taken and no contact with Mr. and Mrs. Khatri. So, Moussa continued to escalate his bullying, sexual harassment and threat to shoot to "KILL" Amirah.

In these times, more and more children are involved in these types of incidents or crimes that a teacher, counselor, principal and school board can't ignore.

The school's failure to take proper action, only exacerbated the situation as the bullying continued. On Wednesday, September 22, 2021 Mrs. Khatri saw Amirah's teacher, Ms. Gerardo in the office. Mrs. Khatri asked Ms. Gerardo if she was aware of the bullying towards Amirah. She replied that her and Ms. Barr, the social worker was aware of these bullying, sexual harassment, and threat to shoot Amirah. Ms. Gerardo's reply gave Mrs. Khatri the impression that it wasn't a big deal. However it was, On Thursday, September 23, 2021, Moussa raised the stakes to Amirah as his threats became more specific and graphic. He said, **"He would like to shoot a bullet in her head in a way that bloodstream would roll down her eyeball"**. Mrs. Khatri on Thursday checked into the office and was surprised to see her daughter sitting in the principal's office. Mrs. Khatri's thoughts were that either Amirah hurt herself during recess or was sick. Mrs. Khatri wanted to know what happened. That's when Amirah told her of the vicious threat of being shot. Ms. Currie instructed Amirah to go to the office. Mrs. Khatri was present, and her daughter and her friend were interviewed by Ms. Tiba. The principal did not include Mrs. Khatri in the interview. Ms. Tiba never discussed with Mrs. Khatri's the contents of the conversation she had

with Amirah, in violation of the reporting requirements of district policy and state law and what remedial action should be taken.

This vicious threat, the fourth incident, should have put the school on notice that Amirah needs protection.   The school has never talked to Amirah's parents, which proves that the authorities in the school whitewashed these incidents and violated the law and its own policies. The Dearborn School Board, Dearborn Student Services, Lindbergh Principal, Ms. Gerardo (4th Grade Teacher), Ms. Barr (Social Services Worker) and the School Resource Officer completely ignored these situations. Ms. Currie saved Amirah from incident on September 23, 2021 as it was happening during lunch recess on school property. Ms. Currie apologized to Mrs. Khatri, and she was sympathetic to her.  Amirah was waiting in the principal's office when Ms. Tiba arrived and met with Amirah and her friend for two minutes.

Further, Mrs. Ghazala Khatri assists in the lunchroom and is the PTA President. She knows Amirah's teachers personally, including Ms. Tiba. Ms. Tiba by law had a duty to notify Mrs. Khatri of the incident, but failed again. She ignored her. Mrs. Khatri was stunned that Ms. Tiba failed to talk to her. Mrs. Khatri took her daughter to the cafeteria, and five of Amirah's classmates confirmed to her that Moussa threatened Amirah with a bullet to her head. Mrs. Khatri called the Dearborn police department on September 23, 2021, and School Resource officer, Chad Hanson, arrived at the office and did NOT to speak to Mrs. Khatri at all.  The school resource officer, Chad Hanson, met with the principal only in private in her office for less than few minutes, and he immediately left Lindbergh Public School without even talking to Mrs. Khatri who was in Lindbergh Office.  He failed to INVESTIGATE. He ignored Mrs. Khatri, and Amirah.  He had a duty to confer with Amirah's parents to inform them of the situation in order to assuage their fears. Further, Ms. Tiba indicated she was aware of the shooting threat of September 16, 2021. Mrs.

Khatri as a PTA president can unequivocally state that Ms. Tiba never discussed the shooting threat that occurred on September 16, 2021. Thus, she wasn't truthful.  The school clearly showed its true face, that it would tolerate the behavior of bullies by its failure to discipline these children. This led to further victimization of Amirah and it gave the green light to Moussa and his crew, that his behavior was acceptable.

As an added point, Mrs. Khatri learned about these incidents, not from Amirah's teachers or Mrs. Tiba, but from her child who was too scared at first to tell her mother.  The school board issued its policies concerning harassment by expressing this policy: "...to maintain an education and work environment that is free from all unlawful harassment, including sexual harassment". The school violated their own policy in Dearborn Public Schools Section 1000, entitled Anti-Harassment, clearly states that the Dearborn School Board "...will also take immediate steps to impose disciplinary action on individuals engaging in any of the following prohibited acts...". The prohibited acts that Section 1000 identifies call upon teachers who knew about these incidents to investigate. The section below makes this duty very clear.

SECTION 1000:

C. Disregarding, failure to investigate adequately, or delaying investigation of allegations of harassment when responsibility for reporting and/or investigating unlawful harassment charges comprises part of one's supervisory duties. (Emphasis supplied).

Ms. Tiba, Ms. Gerardo and Ms. Barr are clothed with supervisory duties, and they both failed to take any action against Amirah's bullies. They failed to thoroughly investigate these incidents, and did not immediately report these incidents to Mrs. Khatri, who was in the building at the time of each of these incidents. Ms. Tiba as "building principal," had the authority to rectify the situation.

Bullying as defined by the board is:

"... any unwanted and repeated written, verbal, or physical behavior, including any threatening, insulting, or dehumanizing gesture, by an adult or student, that is

severe or pervasive enough to create an intimidating, hostile, or offensive educational or work environment; cause discomfort or humiliation; or unreasonably interfere with the individual's school or work performance or participation; and may involve:

    A. teasing;

    B. threats;

    C. intimidation;

    D. stalking;

    E. cyberstalking;

    F. cyberbullying;

    G. physical violence;

    H. theft;

    I. sexual, religious, or racial harassment;

    J. public humiliation; or

    K. destruction of property."

Amirah was intimidated, teased, threatened with a physically violent act when Mousa threatened Amirah. He explicitly said on September 16, 2021, that **"I feel like putting a bullet in your head"**, and repeated it again in more graphic detail on September 23, 2021. Ms. Gerardo, the social worker, Ms. Barr and the principal Ms. Tiba were aware of these incidents but failed to take action in dereliction of their supervisory role.

Also, the district's policy of harassment further states that:

"... any threatening, insulting, or dehumanizing gesture, use of technology, or written, verbal or physical conduct directed against a student or school employee that:

A. places a student or school employee in reasonable fear of harm to his/her person or damage to his/her property;

B. has the effect of substantially interfering with a student's educational performance, opportunities, or benefits, or an employee's work performance; or

C. has the effect of substantially disrupting the orderly operation of a school."

Thus, the definitions of bullying and harassment apply in this situation as Amirah is in fear of harm. These acts by Moussa and the negligent supervision of school officials have interfered with her educational opportunities.

Continuing, the School Board has a policy against sexual harassment. This section outlines some of the prohibited acts. Set forth below are the areas that Moussa and Ryan violated (D., E., and G.)

These sections state:

"D. Unwelcome verbal expressions of a sexual nature, including graphic sexual commentaries about a person's body, dress, appearance, or sexual activities; the unwelcome use of sexually degrading language, jokes or innuendoes; unwelcome suggestive or insulting sounds or whistles; obscene telephone calls.

E. Sexually suggestive objects, pictures, videotapes, audio recordings or literature, placed in the work or educational environment, which may embarrass or offend individuals.

G. A pattern of conduct, which can be subtle in nature, that has sexual overtones and is intended to create or has the effect of creating discomfort and/or humiliation to another."

Moussa and Ryan's throwing of the genitalia laden sticky notes, violates Sections D., E., and G. above.  The sticky notes are sexually suggestive objects which had sexual overtones. Moussa's statement to Amirah when he told her to rub the sticky notes on her body violated Section D.

The school boards policy identifies aggressive behavior as a form of Bullying. In section 5000, entitled "Bullying and other aggressive behavior toward students, " The school board sets forth their policy to provide a "safe and nurturing educational environment." **Bullying is strictly**

**prohibited.** Amirah has feared for her safety. The bullying and the failed response by the school resulted in further victimization of Amirah. A reasonable supervisor in the position of Ms. Tiba, knew or should have known that the behavior by Moussa and his gang had a direct impact upon Amirah and her educational opportunities. They should have known that Amirah had a reasonable fear of physical harm, which has affected her mental health. The policy regarding aggressive behavior states:

> "Aggressive behavior is defined as inappropriate conduct that is repeated enough, or serious enough, to negatively impact a student's educational, physical, or emotional well-being. Such behavior includes, for example, Bullying, hazing, stalking, intimidating, menacing, coercion, name-calling, taunting, and making threats."

Amirah reported these incidents to the proper authorities. Ms. Tiba is ultimately responsible for the continued victimization of Amirah. No discussion has been had with Amirah and her parents. Thus Ms. Tiba failed to give Mr. and Mrs. Khatri the results of her investigation. Ms. Tiba has a duty to investigate and document these incidents. What actions were taken against Moussa, Ryan and the others. Have they been suspended? Why hasn't Mr. and Mrs. Khatri been notified by a formal letter from Ms. Tiba of her investigation.

According to District policy:

> "If the investigation finds an instance of Bullying or aggressive behavior has occurred, it will result in prompt and appropriate remedial action. This may include up to expulsion for students, up to discharge for employees, exclusion for parents, guests, volunteers, and contractors, and removal from any officer position and/or a request to resign for Board members. Individuals may also be referred to law enforcement officials.

> And

> The parent(s) of the student responsible for the bullying behavior as well as the parent(s) of the victim of the bullying behavior shall be notified of the findings of the investigation, and as appropriate, that remedial action has been taken."

Any ordinary reasonable school official would have found that bullying, harassment, and sexual harassment occurred. The school board explicitly states that a teacher can suspend a student from class if they engage in conduct prohibited by law. No remedial action was taken. What is very interesting to the KHATRI, Estates is that "the teacher shall immediately send the student to the administrator and shall specify in writing the reason for the suspension." Ironically it was Amirah who was sent to an administrator, not Moussa and his crew continuing the pattern of victimization. The KHATRI, Estates are demanding an immediate investigation into the above incidents. Further, Moussa and his cohorts must be disciplined by expulsion. Lastly, the principal through her blind eye regarding these incidents, is not fit to run a school and either must be terminated of her duties as she failed to act when the incidents were brought to her attention. Ms. Tiba's should be terminated as well. Next, Ms. Gerardo should be terminated for her inability to act as she breached her duty of care, as stated in the School Boards Policies. The bullying by Moussa and Ryan and others have been severe. They are still in school. The failure by Ms. Tiba only furthered the victimization of Amirah.

**UNITED STATES DISTRICT COURT**
**for the**
**EASTERN DISTRICT of MICHIGAN**

| | | |
|---|---|---|
| AZAZHUSEN    KHATRI, Estate | ) | |
| PLAINTIFF, | ) | |
| v. | ) | |
| | ) | |
| | ) | Case No. |
| DEARBORN PUBLIC | ) | |
| SCHOOLS DISTRICT, et al. | ) | Judge: |
| Defendant. | ) | |

## EXHIBIT 2

AMIRAH'S LETTER OF CLAIM TO DEARBORN LINDBERGH ELEMENTARY SCHOOL

# SLK
## SHELDON L. KAY & ASSOCIATES

**30445 NORTHWESTERN HWY. ● SUITE 320 ● FARMINGTON HILLS, MI 48334**
**ATTORNEYS AT LAW**

Tel. (248) 539-1111          E-Mail slklaw@hotmail.com          Fax (248) 539-1114

Via Registered Mail & Hand Delivered
October 19, 2021

DEARBORN PUBLIC SCHOOLS
ATTN: **Superintendent Dr. Glenn Maleyko**
18700 Audette St.
Dearborn, MI 48124-4222

Re: Student Amirah Khatri
       4th Grade Lindbergh Elementary School
       Principal: Ms. Zainah Tiba
       Type of Action: Bullying etc.


Dear Dr. Maleyko:

        This letter is a direct and formal complaint to the Dearborn School Board and any other required officials, it shall take the place of any required format outlined in the Dearborn School Board policies. I represent Amirah Khatri, a 4th-grade student at Lindbergh Elementary School, and her parents Mr. Azaz and Mrs. Ghazala Khatri. Several documented incidents involving threats of physical violence, sexual harassment, intimidation, and bullying have occurred against Amirah at Lindbergh Elementary and were ignored by Ms. Zainah Tiba, the "building principal", and others in their supervisory role.

        The situation is particularly troubling as Mrs. Khatri is a member of the school's parent-teacher association (she has been the PTA treasurer for four years and is its current president) and a volunteer there for the past eight years. All of that said, she has no faith that on-site school administrators will address this problem. Her trust in the school's leadership is broken.

        The teachers and Ms. Tiba, were made aware of these incidents, did nothing to resolve the matters, and the bullying escalated to the point where the Khatris had no choice, but to remove their child for safety reasons. The principal and certain teachers have failed to protect Amirah. The bullies have faced no consequences for there actions. Simply, Lindbergh school has not safeguarded Amirah, in violation of Dearborn Public Schools written policy and state law.

        The child is too frightened to attend school, and her parents fear that she may be psychologically damaged as a result of the unchecked trauma inflicted by a gang of students. Amirah

Page 1 of 9

and her parents have good reason to believe that the incidents will continue without intervention. Amirah's parents are worried that this situation is compromising her school experience in the Dearborn School District and will have lasting, corrosive effects on her education going forward. A strong response is needed from the Dearborn School Board against the principal, certain teachers, and the perpetrating students.

The four incidents at Lindbergh Elementary, have caused trauma to Amirah and her parents. The bullying began on the first day of school, August 30, 2021 by gang of boys. It continued until her parents were forced to remove their daughter, to protect her from the constant bullying, harassment, and intimidation. The leader of this school gang is Moussa, another 4th-grade student. His followers are Ryan, Jacob, Hussam, and Mayal.

The bullying escalated on Monday, September 13, 2021, with a vile and filthy incident involving Moussa and Ryan. This culminated in an incident of sexual harassment, during Daily 5 or Mindfulness time. They took some sticky notes, went into the bathroom and rubbed the sticky notes against their genitalia. They came back to class, and told their friends what they had done, and threw the sticky notes at Amirah which landed at her desk, to their friends amusement.

Furthermore, Moussa walked up to Amirah's desk and told her to kiss the sticky notes, and rub them all over her body, like a "sanitizer." Asking Amirah to kiss the sticky notes is disgusting behavior coming from anyone, let alone from a nine-year-old boy. A classmate who sat next to Moussa heard this conversation and warned Amirah not to touch it. The 4th-grade teacher, Ms. Gerardo, knew about this incident and failed to discipline Moussa and Ryan. She told Amirah to wash her hands and report to the social worker instead, instead of returning to class. Amirah, who did nothing wrong was sent to a counselor, Moussa and Ryan were not disciplined. These students had the green light to continue with their harassment.

Ms. Gerardo did not inform Amirah's parents of this incident, even though she was required to do so by law. Further, under the Michigan Child Protection Act, teachers and counselors are required by law to report this type of abuse. No DHS-3200 form or any online report was filed with the Department of Social Services. Ms. Gerardo, the counselor, and Ms. Tiba had a legal duty to report this incident, and they failed. MCL 380.131(5)(f) states that there should be:

> "A procedure for providing notification to the parent or legal guardian of a victim of bullying and the parent or legal guardian of a perpetrator of the bullying."

What were the schools procedures and why didn't they inform Amirah's parents? The school was aware of these rules because its mandated to be conspicuously posted at the school.

Had Moussa's and Ryan's behavior taken place in a work setting, severe consequences would have occurred. A lawsuit for a hostile work environment would have ensued. A school setting is no different. Chad Hanson, the school resource officer, a Dearborn Police Officer was notified and

failed to investigate whether a criminal complaint should be filed with the Wayne County Juvenile Court. He did not interview, Amirah or her mother. In my practice, I have handled juvenile cases similar to this. The failure to act furthered the escalation of victimization and consequently caused grief to Amirah and her parents.

Since the school failed to take action against Moussa and Ryan, they continued to bully Amirah. On Thursday September 16th, Moussa, in the playground, around 11:15 A.M., threatened to shoot her. A friend of Amirah has confirmed this. Those names will be given to the board upon their request. Moussa said **"I feel like putting a bullet in your head."** This threat of physical violence should have been dealt with by someone in authority, such as Ms. Gerardo or Ms. Tiba.

Again, Ms. Gerardo did nothing and sent Amirah to the counselor, Ms. Barr. Ms. Barr was too busy to deal with this incident, so Amirah reported it to Ms. Barr the next day on Friday, September 17th. Ms. Barr indicated that she would talk to Moussa. If she spoke to Moussa about this incident, it did not affect him, as you will see. However, for Amirah, the school is turning its back on her. Amirah was too afraid to go to school on Monday, September 20th. Amirah told her parents she was getting bullied, however the fear of retaliation by Moussa and others kept her from really divulging to her parents what happened in detail. Please note that the school was aware that Mrs. Khatri was in the cafeteria on September 16th and in the media center on September 17th. No report was made to Mrs. Khatri even though she volunteers every day during the lunch hour. The principal had a duty to inform Mrs. Khatri.

The threat to shoot Amirah caused fear and apprehension. This is a classic law school example of assault, putting someone in fear and apprehension of a battery, both civilly and criminally. Amirah was very scared, and she remains so, and fears returning to her elementary school. When Moussa and Ryan threw the sticky note, they intended to hit her with it. No one would consent to these actions. The school was put on notice of the two incidents and did nothing! Again, no disciplinary measures were taken and no contact with Mr. and Mrs. Khatri. So Moussa continued.

In these times, more and more children are involved in these types of incidents or crimes that a teacher, counselor, principal and school board can't ignore. The School Board gives lip service on its web page that they won't tolerate bullying. The School Board needs to act now and enforce their own rules. There is zero tolerance to bullying at least on paper.

The school's failure to take proper action, only exacerbated the situation as the bullying continued. On Wednesday, September 22, Mrs. Khatri saw Amirah's teacher, Ms. Gerardo in the office. Mrs. Khatri asked Ms. Gerardo if she was aware of the bullying towards Amirah. She replied that her and Ms. Barr, the social worker were aware of this. Ms. Gerardo reply gave Mrs. Khatri the impression that it wasn't a big deal. However it was!

On Thursday, September 23, 2021, Moussa raised the stakes to Amirah as his threats became more specific and graphic. He said, **"that he would like to shoot a bullet in her head in**

**a way that bloodstream would roll down her eyeball."** Mrs. Khatri on Thursday checked into the office and was surprised to see her daughter sitting in the principal's office. Mrs. Khatris's thoughts were that either Amirah hurt herself during recess or was sick. Mrs. Khatri wanted to know what happened. That's when Amirah told her of the vicious threat of being shot. Ms. Currie instructed Amirah to go to the office. Mrs. Khatri was present, and her daughter and her friend were interviewed by Ms. Tiba. The principal did not include Mrs. Khatri in the interview. Ms. Tiba never discussed with Mrs. Khatri's the contents of the conversation she had with Amirah, in violation of the reporting requirements of district policy and state law and what remedial action should be taken.

This vicious threat, the fourth incident, should have put the school on notice that Amirah needs some protection. The school has never talked to Amirah's parents, which proves that the authorities in the school whitewashed these incidents and violated the law and its own policies. This type of behavior will not be tolerated by Mr. and Mrs. Khatri, and it shouldn't be by the officials at Lindbergh and the Dearborn School Board. It is now incumbent on the School Board to take immediate action by disciplining the students, the teachers, the counselor, and especially Ms. Tiba, who completely ignored this situation.

However, one teacher, Ms. Currie, took action, and she should be commended. Ms. Currie saved Amirah regarding the September 23 incident. Ms. Currie apologized to Mrs. Khatri, and she was sympathetic to her. Amirah was waiting in the principal's office when Ms. Tiba arrived and met with Amirah and her friend for two minutes. Further, Mrs. Ghazala Khatri assists in the lunchroom and is the PTA President. She knows Amirah's teachers personally, including Ms. Tiba. Ms. Tiba by law had a duty to notify Mrs Khatri of the incident, but failed again. She ignored her. Mrs. Khatri was stunned that Ms.Tiba failed to talk to her. Mrs. Khatri took her daughter to the cafeteria, and five of Amirah's classmates confirmed to her that Moussa threatened Amirah with a bullet to her head.

Mrs. Khatri called the Dearborn police department on September 23, 2021, and Police officer Chad Hanson, the school resource office arrived at the office and failed to speak to Mrs. Khatri . Ofc. Hanson met with the principal only. He failed to investigate. He ignored Mrs. Khatri, and Amirah. He had a duty to confer with Amirah's parents to inform them of the situation in order to assuage their fears. Further, Ms. Tiba indicated she was aware of the shooting threat of September 16, 2021, but stated that it happened 3 weeks before and indicated this during a PTA meeting which was after school hours. Mrs. Khatri who is the PTA president can unequivocally state that Ms. Tiba never discussed the shooting threat that occurred on September 16th. Thus she wasn't truthful.

The school clearly showed its true face, that it would tolerate the behavior of bullies by its failure to discipline these children. This led to further victimization of Amirah and it gave the green light to Moussa and his crew, that his behavior was acceptable.

As an added point, Mrs.Khatri learned about these incidents, not from Amirah's teachers or

Mrs. Tiba, but from her child who was too scared at first to tell her mother.

The school board issued its policies concerning harassment by expressing this policy:

> "...to maintain an education and work environment that is free from all unlawful harassment, including sexual harassment." The school violated this policy. Further:

Section 1000, entitled Anti-Harassment, clearly states that the Dearborn School Board "will also take immediate steps to impose disciplinary action on individuals engaging in any of the following prohibited acts." The prohibited acts that Section 1000 identifies call upon teachers who knew about these incidents to investigate. The section below makes this duty very clear.

> SECTION 1000:
>
> "C. Disregarding, failure to investigate adequately, or delaying investigation of allegations of harassment when responsibility for reporting and/or investigating unlawful harassment charges comprises part of one's supervisory duties."
> (Emphasis supplied).

Ms. Gerardo and the principal are clothed with supervisory duties, and they both failed to take any action against Amirah's bullies. They failed to thoroughly investigate these incidents, and did not immediately report these incidents to Mrs. Khatri, who was in the building at the time of each of these incidents.  Ms. Tiba as "building principal," had the authority to rectify the situation.

Bullying as defined by the board is:

> "... any unwanted and repeated written, verbal, or physical behavior, including any threatening, insulting, or dehumanizing gesture, by an adult or student, that is severe or pervasive enough to create an intimidating, hostile, or offensive educational or work environment; cause discomfort or humiliation; or unreasonably interfere with the individual's school or work performance or participation; and may involve:
>
> A.   teasing;
>
> B.   threats;
>
> C.   intimidation;
>
> D.   stalking;

     E.      cyberstalking;

     F.      cyberbullying;

     G.     physical violence;

     H.     theft;

     I.      sexual, religious, or racial harassment;

     J.      public humiliation; or

     K.     destruction of property."

Amirah was intimidated, teased, threatened with a physically violent act when Mousa threatened Amirah. He explicitly said on September 16, 2021, that **"I feel like putting a bullet in your head,"** and repeated it again in more graphic detail on September 23, 202., Ms. Gerardo, the social worker, and Ms. Tiba were aware of these incidents but failed to take action in dereliction of their supervisory role.

Also, the district's policy of harassment further states that:

"... any threatening, insulting, or dehumanizing gesture, use of technology, or written, verbal or physical conduct directed against a student or school employee that:

     A.     places a student or school employee in reasonable fear of harm to his/her person or damage to his/her property;

     B.     has the effect of substantially interfering with a student's educational performance, opportunities, or benefits, or an employee's work performance; or

     C.     has the effect of substantially disrupting the orderly operation of a school."

Thus, the definitions of bullying and harassment apply in this situation as Amirah is in fear of harm. These acts by Moussa and the negligent supervision of school officials have interfered with her educational opportunities.

Continuing, the School Board has a policy against sexual harassment. This section outlines some of the prohibited acts. Set forth below are the areas that Moussa and Ryan violated (D., E., and

G.) These sections state:

> "D.      Unwelcome verbal expressions of a sexual nature, including
> graphic sexual commentaries about a person's body, dress,
> appearance, or sexual activities; the unwelcome use of sexually
> degrading language, jokes or innuendoes; unwelcome suggestive or
> insulting sounds or whistles; obscene telephone calls.

> E.      Sexually suggestive objects, pictures, videotapes, audio
> recordings or literature, placed in the work or educational
> environment, which may embarrass or offend individuals.

> G.      A pattern of conduct, which can be subtle in nature, that has
> sexual overtones and is intended to create or has the effect of creating
> discomfort and/or humiliation to another."

Moussa and Ryan's throwing of the genitalia laden sticky notes, violates Sections D., E., and
G. above. The sticky notes are sexually suggestive objects which had sexual overtones. Moussa's
statement to Amirah when he told her to rub the sticky notes on her body violated Section D.

The school boards policy identifies aggressive behavior as a form of Bullying. In section
5000, entitled "Bullying and other aggressive behavior toward students, " The school board sets forth
their policy to provide a "safe and nurturing educational environment." **Bullying is strictly
prohibited.** Amirah has feared for her safety.  The bullying and the failed response by the school
resulted in further victimization of Amirah.  A reasonable supervisor in the position of Ms. Tiba,
knew or should have known that the behavior by Moussa and his gang had a direct impact upon
Amirah and her educational opportunities.  They should have known that Amirah had a reasonable
fear of physical harm, which has affected her mental health.  The policy regarding aggressive
behavior states:

> "Aggressive behavior is defined as inappropriate conduct that is
> repeated enough, or serious enough, to negatively impact a student's
> educational, physical, or emotional well-being. Such behavior
> includes, for example, Bullying, hazing, stalking, intimidating,
> menacing, coercion, name-calling, taunting, and making threats."

Amirah reported these incidents to the proper authorities. Ms. Tiba is ultimately responsible
for the continued victimization of Amirah. No discussion has been had with Amirah and her parents.
Thus Ms. Tiba failed to give Mr. and Mrs. Khatri the results of her investigation. Ms. Tiba has a
duty to investigate and document these incidents. What actions were taken against Moussa, Ryan

and the others. Have they been suspended? Why hasn't Mr. and Mrs. Khatri been notified by a formal letter from Ms. Tiba of her investigation.

According to District policy:

> "If the investigation finds an instance of Bullying or aggressive behavior has occurred, it will result in prompt and appropriate remedial action. This may include up to expulsion for students, up to discharge for employees, exclusion for parents, guests, volunteers, and contractors, and removal from any officer position and/or a request to resign for Board members. Individuals may also be referred to law enforcement officials.

> And

> The parent(s) of the student responsible for the bullying behavior as well as the parent(s) of the victim of the bullying behavior shall be notified of the findings of the investigation, and as appropriate, that remedial action has been taken."

Any ordinary reasonable school official would have found that bullying, harassment, and sexual harassment occurred. The school board explicitly states that a teacher can suspend a student from class if they engage in conduct prohibited by law. No remedial action was taken. What is very interesting to the Khatris is that "the teacher shall immediately send the student to the administrator and shall specify in writing the reason for the suspension." Ironically it was Amirah who was sent to an administrator, not Moussa and his crew continuing the pattern of victimization.

The Khatris are demanding an immediate investigation into the above incidents. Further, Moussa and his cohorts must be disciplined by expulsion or suspension. Lastly, the principal though her blind eye regarding these incidents, is not fit to run a school and either must be suspended or terminated of her duties as she failed to act when the incidents were brought to her attention. Ms. Tiba's failure to act has further victimized Amirah. Next, Ms. Gerardo should at least be suspended for her inability to act as she breached her duty of care, as stated in the School Boards Policies. The bullying by Moussa and Ryan and others have been severe. They are still in school. The failure by Ms. Tiba only furthered the victimization of Amirah.

My client's must have an immediate response. A prompt investigation must be undertaken. All correspondence by any of the school officials must be directed to my office only. Further, the Khatris and Amirah are fearful that Moussa and his friends will retaliate because of the reporting of these incidents.

Concluding, the Khatris want to make sure that this never happens again to any other children

Page 8 of 9

and their parents or guardians. The Khatris would like steps taken to punish all parties involved as outlined above, and to ensure their daughter can return to a safe learning environment free of retaliation.  The Khatris are willing to legally pursue any parties resistant to this outcome and they will not stop at the school board if necessary.

Very Truly Yours,

Sheldon L. Kay

SLK/al
CC: Mr and Mrs. Khatris.

Page 9 of  9

## UNITED STATES DISTRICT COURT
### for the
### EASTERN DISTRICT of MICHIGAN

| | | |
|---|---|---|
| AZAZHUSEN    KHATRI, Estate | ) | |
| PLAINTIFF, | ) | |
| v. | ) | |
| | ) | |
| | ) | Case No. |
| DEARBORN PUBLIC | ) | |
| SCHOOLS DISTRICT, et al. | ) | Judge: |
| Defendant. | ) | |

## **EXHIBIT 3**

DEARBORN SCHOOLS SUPRINTENDENT LETTER ABOUT OXFORD SCHOOL
TRAGEDY

**Office of the Superintendent**



DEARBORN
SCHOOLS

Students First:
Inspire, Educate, Celebrate

November 30, 2021

Greetings,

Our entire Dearborn Schools community is deeply saddened by the horrific and tragic events that occured at Oxford High School.  On behalf of the Board of Education and the entire Dearborn Public Schools family, I want to extend my most heartfelt condolences to the families of the children who were victims of this senseless violence. I offer prayers for a quick recovery to those who sustained serious injuries, and I thank all of the first responders for their heroic actions to restore order and safety.

As a lifelong educator and superintendent, events such as this are my greatest fear. However, as a father, I struggle to even try to put into words the deep emotions and feelings that I know all parents experience at a time like this. The Oxford School community is suffering a great emotional and physical loss. Let's all reach out and support them, offer our kind words to them, and help them as they recover from the shock of this senseless loss of life and emotional trauma.

Unfortunately, this tragedy is also a sobering reminder that terrible events can happen anywhere at any time. It truly takes all of us as a community, working together and communicating, to prevent these violent acts from occurring. Please continue to talk with your children and urge them to reach out to their teachers or other trusted adults when they hear of any potentially dangerous situation or safety issue.

I am very confident in the plans that we have in place to keep our schools safe.  We practice our emergency drills throughout the year and our staff and School Resource Officers build strong relationships with our students to prevent tragedies before they occur. In addition, we are very fortunate to have an outstanding police and fire department in our community who are always here to support the district.

Of course, the entire staff of the Dearborn Public Schools are committed to the safety of our schools and your children. As we reflect on the sad and unexplainable events that occurred in Oxford, let us also take a moment to offer our prayers and support to their entire community.

Regards,

Glenn Maleyko, Ph.D.
Superintendent of Schools

GM/jh/dm

**UNITED STATES DISTRICT COURT**
**for the**
**EASTERN DISTRICT of MICHIGAN**

| | | |
|---|---|---|
| AZAZHUSEN   KHATRI, Estate | ) | |
| PLAINTIFF, | ) | |
| v. | ) | |
| | ) | |
| | ) | Case No. |
| DEARBORN PUBLIC | ) | |
| SCHOOLS DISTRICT, et al. | ) | Judge: |
| Defendant. | ) | |

## **EXHIBIT 4**

DEARBORN POLICE REPORTS

CR No: 210056365

## DEARBORN PD
16099 MICHIGAN AVE.
DEARBORN MI 48126
313 943-2241



### Case Report

### Administrative Details:

| CR No | Subject |
|---|---|
| 210056365 | 1316 – Intimidation (Also includes Interfering with 911 call) [13003] |
| Report Date/Time | Occurrence Date/Time |
| 09/28/2021 19:39 | 09/23/2021 11:05 |
| Location | Call Source |
| 500 N WAVERLY | PHONE |
| Dispatched Offense | Verified Offense |
| 1316 Intimidation (Also includes Interfering with 911 call) | 1316 Intimidation (Also includes Interfering with 911 call) |
| OIC | OIC Contact Number |
| Hanson, Chad (DBHANSONC-00503) | |
| County | City/Twp/Village |
| 82 - Wayne | 95 - Dearborn |
| Division | |
| Patrol | |

### Action Requested:

[ ] Arrest warrant          [ ] Review only

[ ] Search warrant          [ ] Forfeiture

[ ] Juvenile petition       [ ] Other

Created On 10/15/2021 12:01 PM

CR No: 210056365

| Offenses: |
|---|

| 1316 - Intimidation (Also Includes Interfering with 911 call) | | |
|---|---|---|
| IBR Code / IBR Group | Offense File Class | |
| 13C - Intimidation / A | 13003 - INTIMIDATION/STALKING | |
| Crime Against | Loca ion Type | Offense Completed |
| PE | 31 - School | Completed |
| Domestic Violence | Hate/Bias | |
| No | 00 - None (No Bias) | |
| Using | | Cargo Theft |
| A-Alcohol: No   C-Computer Equipment: No   D-Drugs/Narcotics: No | | |
| Criminal Activity | | |
| N - None/Unknown | | |

| People: |
|---|

**SUSPECT, UNKNOWN  (S-SUSPECT)  [DBGOEBELD (00466)]**

| Last Name | First Name | Middle Name | Suffix | Mr/Mrs/Ms |
|---|---|---|---|---|
| SUSPECT | UNKNOWN | | | |
| DOB (Age) | Sex | Race | Ethnicity | Birth City & State | Birth Country | Country of Citizenship |
| | U | UNKNOWN | UNKNOWN | | | |

| Street Address | Apt # | County | Country | Home Phone | Work Phone |
|---|---|---|---|---|---|
| | | | | UNKNOWN | |
| City | State | Zip | Cell Phone | Email | |
| | | | UNKNOWN | | |

**KHATRI, AMIRAH  (V-VICTIM)  [DBGOEBELD (00466)]**

| Victim Type | Victim of | | | | | |
|---|---|---|---|---|---|---|
| I - Individual | 1316 - Intimidation (Also Includes Interfering with 911 call) | | | | | |
| PE: | W.Type: | Last Name | First Name | Middle Name | Suffix | Mr/Mrs/Ms |
| | | ▉ | | | | |
| DOB (Age) | Sex | Race | Ethnicity | Birth City & State | Birth Country | Country of Citizenship |
| ▉ | ▉ | ▉ | | | | |
| Street Address | Apt # | County | Country | Home Phone | Work Phone |
| | | | | ▉ | |
| City | State | Zip | Cell Phone | Email | |
| | | | ▉ | | |
| Victim Injury | | | | | |

| Victim Offender Relationships | | |
|---|---|---|
| Offender | Type | Relationship |
| SUSPECT, UNKNOWN | S-SUSPECT | 99-Relationship Unknown |

**KHATRI, AZAZ  (O-OTHER) (R-REPORTED BY)  [DBGOEBELD (00466)]**

| PE: | W.Type: | Last Name | First Name | Middle Name | Suffix | Mr/Mrs/Ms |
|---|---|---|---|---|---|---|
| | | Khatri | Azaz | | | |
| DOB (Age) | Sex | Race | Ethnicity | Birth City & State | Birth Country | Country of Citizenship |
| | M | UNKNOWN | | | | |
| Street Address | Apt # | County | Country | Home Phone | Work Phone |
| ▉ | | | | | |
| City | State | Zip | Cell Phone | Email | |
| Dearborn | MI | ▉ | ▉ | | |

| Property: |
|---|

| 5500 - Documents/Personal or Business (affidavits, applications, certificates, etc) 5448  [DBGOEBELD | | |
|---|---|---|
| Property Class | IBR Type | UCR Type |

CR No: 210056365

| 48 | 48 - Documents/Personal or Business | K - Miscellaneous | | |
|---|---|---|---|---|
| Status | | | Count | Value |
| E - Evidence (Including Other Seized Property And Tools) | | | 1 | 1 |
| Description | | Disposition | Evidence Tag | |
| 4 page report from Azaz Khatri | | | 210056365.001 | |
| Recovered Date/Time | Location | | Owner | |
| | | | █ , | |

| Narrative: |
|---|

| CR No: 210056365-001    Written By: DBGOEBELD (00466)    Date: 09/29/2021 12:46 AM |
|---|

Threats

On 9/28/2021, I was working the desk, where I spoke with Azaz Khatri. Khatri came in to report threats and harassment against his daughter ████, who is a ████████ ████████████

Khatri reports that his ████████ is constantly having lewd remarks and gestures made to ██ by a group of other ██████████████ . Khatri further stated that a ██████ known as ██████ told his ████████ that █ wanted "to shoot a bullet in ██ head" and wanted to see blood stream down ██ face. Khatri produced a four page report that he prepared outlining all the dates and times his ████████ has been harassed at school. Khatri provided this report to me and I placed same into evidence on tag#210056365.001

Khatri indicated that he has reported these incidents to school administrators, but feels that nothing has been done, which is what prompted him to have the Police involved.

Khatri's note was secured in evidence locker E35.

| CR No: 210056365-002    Written By: DBHANSONC (00503)    Date: 09/29/2021 09:53 AM |
|---|

I was assigned and reviewed this report.

.

I was previously advised of this incident by ████████████████████, Mrs. Tiba. Mrs. Tiba and I had a meeting with the students mother, Mrs. Khatri, back on 9/23/21. Mrs. Khatri, who is also the ████████████ called 9-1-1 from the ██████ to report this incident, however she received the information from other ████████ in the ████████ and did not follow up with Mrs. Tiba about the information she had heard. Mrs. Tiba informed her that she had already handled the situation and spoke with all the ████████ involved and that her ████████ ████████ was not directly involved in this incident.

CR No: 210056365

The original incident occurred approximately two weeks ago from what the ███████ reported. The incident happened on the ██████████ after █████ █████ Mrs. Tiba advised that while the ████████ were on the ████████ several █████ █████ took ████████ hat and were playing "keep away" from ███ █████ became angry that they would not give ███ ██ hat back and stated that ██ would "hurt" them if they did not. ████████ stated ██ did not say ██ would put a bullet in anyone's head. Mrs. Tiba also advised that ██████ did not say this to ███████ and that ███ only over heard the comment.

Mrs. Khatri began listing other times throughout the year in which her ███████ was being "bullied" and made comments that nothing was being done about it. Mrs. Tiba asked when she had reported these incident to her and the mother replied, she hadn't reported them because she and her husband tell their ████████ to not worry about it and to keep it to ███████

Mrs. Tiba assured Mrs. Khatri that she would make sure the teachers were aware of her concerns and she would personally check on ██████ to make sure ██ was ok during the school day. Mrs. Khatri decided she was going to take ██████ home for the day and discuss with her husband their next course of action and if ███ should even return to the school.

I spoke with Mrs. Tiba today (9/29) and she advised that ███████ had not been back to school since the 23rd and that she has reached out to ███ mother and father and has not received any response back. Mrs. Tiba has notified her superiors about the incident as well.

I attempted to contact Mr. Khatri to speak with him about the incident. I received no answer each time and received notification that Mr. Kharti's voicemail box was full and could not receive messages.

I spoke with Director of Student Services, Abe Mashhour about this situation and he advised he was aware of same and that he would also try to reach out to the family.

CASE CLOSED

**UNITED STATES DISTRICT COURT**
**for the**
**EASTERN DISTRICT of MICHIGAN**

AZAZHUSEN   KHATRI, Estate )
                  PLAINTIFF, )
       v. )
  )
  )           Case No.
DEARBORN PUBLIC )
SCHOOLS DISTRICT, et al. )           Judge:
          Defendant. )

## EXHIBIT 5

WAYNE COUNTY OFFICE OF THE PROSECUTING ATTORNEY'S LETTER



**KYM L. WORTHY**
PROSECUTING ATTORNEY

**RICHARD HATHAWAY**
CHIEF ASSISTANT

**DARYL CARSON**
CHIEF OF STAFF

COUNTY OF WAYNE
**OFFICE OF THE PROSECUTING**
**ATTORNEY**
DETROIT, MICHIGAN

1200 FRANK MURPHY HALL OF JUSTICE
1441 ST. ANTOINE STREET
DETROIT, MICHIGAN 48226-2302

TEL  (313) 224-5777
FAX  (313) 224-0974

September 5, 2023

Dear Parent/Guardian:

The Wayne County Prosecutor's Office is encouraging all parents/guardians to have a conversation with your school-age children regarding an issue that has become all too prevalent, namely threats to commit school violence.

As periodic school shootings have become an unfortunate reality across the country, these incidents are naturally publicized in the news and social media. Experience has taught us that the publicity of these school shooting events often prompts a small subset of students to make similar type threats against their schools, teachers, and/or fellow classmates. In many of these cases, the student who made the threat tells investigators that they were "just joking" and seem genuinely shocked by how serious the consequences are for making the threat. Often they make the threat thinking that it is not a big deal as long as they did not plan to actually carry it out. Michigan law, however, makes it a crime to make a threat, even if the person making the threat did not have the intent or the capability of actually carrying it out.

When a threat is made we cannot immediately know whether the threat is a serious threat, or whether the threat is meant to be a so-called prank. Therefore, we in the law enforcement community must take seriously every threat, because to not do so would be to put your child at risk and the community at risk, and we simply cannot take that chance. My office takes these cases extremely seriously, not only because of the need to keep your child and the community safe, but also because of the disruption of the school environment and the significant expenditure of resources by the school and by law enforcement that even a "prank" threat causes.

Page 2
September 5, 2023


Please talk with your children. Help them understand that their words can have lifelong consequences. Students can be charged with crimes such as False Threat of Terrorism or Threat of Terrorism. A new law enacted last year also makes it a crime to Threaten to Commit Violence Against Students or Employees on School Property. These crimes can result in sentences up to 10 or 20 years in prison for an adult. It is worth noting that many seniors in high school are already 18, which legally makes them an adult in the state of Michigan. In addition to the potential legal consequences, such charges may: affect a student's ability to get federal financial aid for college; cause them to lose college scholarships; cause them to be denied college admission; and result in them having to disclose pending cases or criminal convictions on job applications.

We know that in past school shootings, the individuals involved usually shared their plans with one or more of their peers, before they acted on those plans. Therefore, it is critical that you also encourage your children to report any threats that they hear about (including threats posted via social media, texts, emails, etc.) so that these tragic situations can be prevented before they have a chance to start.   Stress to your children that reporting could be life-saving and that it is "always better to be safe than sorry."

Thank you for taking the time to read this letter and for working with my office to keep your children and our community safe.

Sincerely,

Kym L. Worthy
Wayne County Prosecutor

**UNITED STATES DISTRICT COURT**
**for the**
**EASTERN DISTRICT of MICHIGAN**

| | | |
|---|---|---|
| AZAZHUSEN   KHATRI, Estate | ) | |
| PLAINTIFF, | ) | |
| v. | ) | |
| | ) | |
| | ) | Case No. |
| DEARBORN PUBLIC | ) | |
| SCHOOLS DISTRICT, et al. | ) | Judge: |
| Defendant. | ) | |

## **EXHIBIT 6**

KHATRI, Estate's ATTORNEY LETTER TO DEARBORN POLICE DEPARTMENT

# SLK

## S H E L D O N   L .   K A Y   &   A S S O C I A T E S

**30445 NORTHWESTERN HWY. ● SUITE 320 ● FARMINGTON HILLS,  MI 48334**
**ATTORNEYS AT LAW**

Tel. (248) 539-1111                    E-Mail slklaw@hotmail.com                    Fax (248) 539-1114

October 28, 2021

Dearborn Police Department
ATTN: Chief of Police
Ronald Haddad
16099 Michigan Ave.
Dearborn, MI. 48126

Re: Case #: 210056365
Lindbergh Elementary
Bullying Incidents

Dear Chief Haddad:

I represent Mr. Azaz Khatri and Mrs. Ghazala Khatri and their daughter Amirah Khatri, a nine-year-old fourth-grade student who recently attended Lindbergh Elementary School.   Amirah experienced extreme bullying by a group of unpunished children.   The Khatris decided for Amirah's safety to keep her at home. The non-intervention by Lindbergh Elementary and the whitewashing of the incident by a member of your department have exacerbated the situation.

On September 23, 2021, the Dearborn Police were contacted on the non-emergency phone line by Mrs. Khatri regarding a severe threat to shoot their daughter Amirah. The danger was graphically stated to the child to rule out any consideration that it was just a joke.  The letter given to your department by Mr. Khatri contained the documented statements.  Mrs. Khatri called the Dearborn police as soon as she learned the details of these incidents. Five of Amirah's classmates verified these facts during their lunch hour.

However, the resulting investigation has strayed from both protocol and your department's legal duty to take these bullying threats within Michigan schools seriously. Upon reviewing the information

Page 1

provided in the incident report, authored by Officer Chad Hanson, several material facts were misrepresented and or omitted. These omissions are very concerning and have prompted my clients to consider other potential remedies. Such remedies would include contacting the Wayne County Prosecutor's office, who may wish to look at this matter or even involving the State Police. The lack of care shown and the misrepresentation of material facts will serve as the catalyst for County or State oversight. Any parties directly or indirectly involved in any efforts to misrepresent, hide, or cover up details regarding these incidents will be brought to task. Even though he stated otherwise, Officer Chad Hanson's failure to speak with Mrs. Khatri undermines his investigation. This untruth is a clear misrepresentation of the facts. Officer Hanson noted in his report: **"SUSPECT, UNKNOWN."** That is patently false. The names were given to Officer Hanson by Mr. Khatri, and the Officer spoke with the school principle Ms. Tiba, who must have told him who the culprits were. For him to state that the suspects were unknown is not believable.

Further, the failure to interview Amirah, the victim, raises serious questions about his investigation and the nature of his relationship with Lindbergh's staff. There was no excuse for not interviewing the victim or her mother. Mrs. Khatri reports that Officer Hanson walked directly into Ms. Tiba's office and ignored Mrs. Khatri on his way out. These facts bolster doubts about the quality and integrity of this investigation.

Lindbergh Elementary School's failure to act has resulted in my client's suffering and her subsequent removal from the school due to fear for her safety. The Dearborn Police's deviation from protocol by not allowing Mrs. Khatri and Amirah to make any statements further victimizes the child. A mother concerned for her child's safety contacted your department and was dismissed as not even worth interviewing. That has crippled my client's faith in your department and its ability to protect their daughter or take seriously the threats and bullying she is forced to endure at Lindbergh

Page 2

Elementary. The bullying incidents are not a typical "boys will be boy's situation," which seems to be the tone taken by your department and Lindbergh Elementary.

The State of Michigan takes bullying very seriously by the recent passage of the Anti-Bullying statute in 2011. Former Governor Rick Synder stated, "bullying at any time, under any circumstances, is wrong – period." These statutes, MCL 380.1310b & 380.1310(10(b) take these matters seriously. The Wayne County Prosecutor, Kim Worthy, spoke to this issue in a letter sent to parents. She stated unequivocally that "Michigan law, however, makes it a crime to make a threat, **even if the person making the threat did not have the intent or the capability of actually carrying it out."** This statement applies to juveniles!

Thus, Lindbergh Elementary's failure to act effectively and according to State law and local policy has exposed them to pending legal action. We do not intend to overlook the role of the Dearborn Police Department. We have reason to believe that the failure of the Dearborn Police Department is due in part to a conflict of interest. Should we find this the case, the County and the State may have to oversee and investigate this case correctly.

My clients wish to meet with you to resolve this situation. Please schedule a date and time in which we can meet to discuss this matter in detail. I thank you for your prompt attention.

Very Truly Yours,

Sheldon L. Kay

SLK/do
CC: Mr. & Mrs. Khatri
David Olojo LC

Page 3

JS 44 (Rev. 08/18)

# CIVIL COVER SHEE

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filin
provided by local rules of court. This form, approved by the Judicial Conference of the United States in
purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Case: 2:23-cv-12930
Assigned To : Michelson, Laurie J.
Referral Judge: Grand, David R.
Assign. Date : 11/16/2023
Description: CMP KHATRI V.
DEARBORN PUBLIC SCHOOLS DISTRICT (NA)

| I. (a) PLAINTIFFS | DEFE |
|---|---|
| AZAZHUSEN KHATRI, Estate | DEARBORN PUBLIC SHCOOLS |

| **(b)** County of Residence of First Listed Plaintiff   WAYNE COUNTY | County of Residence of First Listed Defendant   WAYNE COUNTY |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| 2551 Pardee Avenue, Dearborn, Michigan 48124 | 18700 Audette Street, Dearborn, MI 48124 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☒ 3   Federal Question
*(U.S. Government Not a Party)*   Azazu

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☒ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
SEE ATTACHMENT

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
30,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
11/16/2023

SIGNATURE OF ATTORNEY OF RECORD   *Azaz Khatri*

**FOR OFFICE USE ONLY**

RECEIPT #   _____   AMOUNT   _____   APPLYING IFP   _____   JUDGE   _____   MAG. JUDGE   _____